UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YVONNE BROWN,

          Plaintiff,

  v.

DISTRICT OF COLUMBIA,

          Defendant.

Civil Action No. 09-1121 (AK)

## MEMORANDUM OPINION

On October 22, 2010, at the close of all evidence in the above captioned trial, Plaintiff orally moved for judgment on Defendant's *Faragher-Ellerth* defense to Plaintiff's Title VII hostile work environment sexual harassment claim. Plaintiff argued that Defendant's *Faragher-Ellerth* defense must fail, or, in the alternative that the jury decide whether Plaintiff sustained an adverse or significant tangible employment action ("tangible employment action"). If the jury found that a tangible employment action occurred, Defendant would be subject to strict liability on Plaintiff's hostile work environment claim and the jury would not consider the elements of Defendant's *Faragher-Ellerth* defense. Defendant objected to the motion. The Court treated Plaintiff's motion as a Federal Rules of Civil Procedure ("Rule") 50 motion for judgment as a matter of law. The Court **DENIED** Plaintiff's motion in open court on October 22, 2010 (*see* Minute Or. Oct. 22, 2010) and submits this memorandum opinion in support of its oral ruling.

-1-

I.  **LEGAL STANDARD**

   A. <u>Motion for Judgment as a Matter of Law</u>

   A court may grant judgment as a matter of law against a party on any claim, defense, or issue if, after the close of all the evidence, the court determines that there is no legally sufficient basis for a reasonable jury to find for a party.  Fed. R. Civ. P. 50; *see also Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir. 1994).  In making such a determination, the "court may not assess the credibility of witnesses or weigh the evidence." *Hayman v. Nat'l Acad. of Sciences*, 23 F.3d 535, 537 (D.C. Cir. 1994).

   B. <u>*Faragher-Ellerth* Defense</u>

   In a Title VII hostile work environment claim, a defendant employer may avoid vicarious liability for a supervisor's actions by proving that 1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and 2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise [a/k/a the Faragher-Ellerth defense].  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Industries v. Ellerth*, 524 U.S. 742, 762-63 (1998).

   C. <u>Tangible Employment Action and Strict Liability</u>

   However, when a supervisor's harassment culminates in a tangible employment action, the employer will be subject to strict liability and shall not be shielded by an affirmative defense. *See Lutkewitte v. Gonzales*, 436 F.3d 248, 250-51 (D.C. Cir. 2006) (internal citations omitted). A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries*, 524 U.S. at 760-62;

*see also Roebuck v. Washington*, 408 F.3d 790, 793 (D.C. Cir. 2005) (noting that tangible employment actions must have a "significant effect" on plaintiff's employment status, work, or benefits).

## II.   ANALYSIS

   A. <u>Motion for Judgment on Defendant's Faragher-Ellerth Defense</u>

Plaintiff moved for judgment on Defendant's *Faragher-Ellerth* defense. Viewing the evidence in a light most favorable to Plaintiff, and drawing every reasonable inference therefrom, *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983), *cert. denied*, 464 U.S. 994 (1983), the Court denied the motion because there was a legally sufficient basis for the jury to consider Defendant's *Faragher-Ellerth* defense. Defendant District of Columbia presented evidence at trial regarding the sexual harassment policies and procedures in place at the time of the alleged harassment, and the steps Plaintiff took, or did not take, to report the sexual harassment in accordance with the policies and procedures. This evidence addressed the two-prong *Faragher-Ellerth* defense, *see Faragher*, 524 U.S. at 807, and provided a legally sufficient basis for a jury finding that Defendant succeeded in proving their affirmative defense by a preponderance of the evidence. As such, the Court did not deny the jury an opportunity, as the finders of fact, to weigh the evidence and make a determination on the *Faragher-Ellerth* defense.

   B. <u>Plaintiff's Request for Additional Jury Instructions</u>

The Court denied Plaintiff's request for additional jury instructions and a verdict form

question on whether tangible employment actions occurred.[1] While viewing the evidence presented at trial in a light most favorable to Plaintiff, the Court held that no reasonable jury could make such a finding. Plaintiff argued that tangible employment actions occurred on two occasions. First, Lt. Johnson, a supervisor who allegedly sexually harassed Plaintiff, denied Plaintiff the opportunity to work an overtime shift so that she could earn additional money for the Christmas holiday of 2000.[2] In October 2000, Plaintiff approached Lieutenant Johnson and requested additional overtime shifts for the Christmas holidays. Lieutenant Johnson was one of three supervisors who could approve requests for overtime work. Plaintiff testified that Lieutenant Johnson made a crude sexual advance and requested a sexual encounter with Plaintiff in exchange for the opportunity to work an overtime shift.[3] Plaintiff refused Lieutenant Johnson's advances and did not receive overtime approval from Lieutenant Johnson on the requested shift. According to exhibits presented by Plaintiff, she worked at least thirty overtime shifts in the fall of 2000, between September 24, 2000 and December 28, 2000. (Pl.'s Ex. 19) No evidence was presented regarding whether Plaintiff did or did not continue to work overtime shifts in 2001.

Plaintiff argued that a second tangible employment action occurred when Plaintiff

---

[1] Prior to October 22, 2010, the day Plaintiff made her request for a tangible employment action jury instruction, Plaintiff had multiple opportunities to submit proposed non-standard jury instructions to the Court. Not only did Plaintiff not submit a non-standard instruction on the tangible employment action issue prior to October 22, 2010, but Plaintiff submitted instructions on Defendant's *Faragher-Ellerth* defense on three occasions, including the week before trial. (Pl.'s Proposed Jury Instructions 2-3, Jul. 30, 2010 [24]; Pl.'s Pretrial Statement, Ex. A, Oct. 5, 2010 [34]; Pl.'s Am. Pretrial Statement, Ex. A, Oct. 11, 2010 [40]).

[2] Defendant objected on the basis that Plaintiff's prior claim for *quid pro quo* sexual harassment was dismissed with consent of Plaintiff. (*See* Minute Or. Oct., 15, 2010)

[3] Plaintiff and Lt. Johnson offered conflicting testimony regarding why Plaintiff was denied overtime. However, for this Rule 50 motion, the Court views the evidence in the light most favorable to Plaintiff.

received a letter on the District's final decision regarding a proposal to remove her from her position as a corrections officer. (Pl.'s Trial Ex. 9 at 1) The letter, dated March 4, 2004, stated:

> This is a notice of final decision regarding the proposal to remove you from your position of Correction Officer with the D.C. Department of Corrections. ... [Y]ou will be terminated ... on March 12, 2004. This is a straight forward, policy driven decision based solely on the fact that you are physically unable to perform the essential functions of your official position due to an on the job injury ... .

(*Id.* at 1) Plaintiff testified that she suffered an emotional collapse on or around July 18, 2001, caused by the sexual harassment perpetrated by Lt. Johnson. Plaintiff testified at trial that she believed she had a choice between being terminated by the District of Columbia or applying for disability retirement. Plaintiff chose to apply for disability retirement. She was accepted for disability retirement on March 25, 2004 (Pl.'s Trial Ex. 10 at 1) at which time, despite being informed by the March 4, 2004 letter that she would be terminated on March 12, 2004, she had not been terminated (*Id.* ("According to information received from your agency, you have not been separated from government service.")). As a requirement for receiving disability retirement, the United States Office of Personnel Management asked the Department of Corrections to separate Plaintiff in order for her to begin receiving retirement benefits. (*Id.*) Plaintiff argued that she was terminated, or proposed for termination, because of her emotional injuries and that this constitutes a tangible employment action.

This Court held that no reasonable jury could find that either event constituted a tangible employment action. Regarding the denial of overtime pay, Plaintiff did not submit to Lt. Johnson's advances and there is no evidence to suggest that Plaintiff's approval for other overtime shift work was contingent upon her submission to Lt. Johnson's sexual advances. *Cf. Lutkewitte v. Gonzales*, 436 F.3d 248, 252-54 (D.C. Cir. 2006) (holding that the trial court did

not err by declining to give the issue of whether Plaintiff's accusations rose to the level of a tangible employment action to the jury because "no reasonable jury could find that appellant's receipt of job benefits was the result of her sexual submission"). Additionally, other supervisors continued to approve her requests for overtime work during the same time period. Exhibits presented at trial demonstrate that Plaintiff regularly worked overtime shifts, as often as three or four times per week, during the months after Lt. Johnson denied Plaintiff's request for overtime in October 2000. Under these facts, the denial of overtime work during the few days of the Christmas holiday does not constitute a "significant change in benefits." *See Faragher*, 524 U.S. at 760-62. Thus, there is no legally sufficient basis for a reasonable jury to conclude that Plaintiff suffered a tangible employment action due to Lt. Johnson's one-time denial of overtime pay.

Second, regarding Plaintiff's claim that a tangible employment action occurred when she received the March 4, 2004 proposed termination letter from Department of Corrections, this Court holds that no reasonable jury could find that a tangible employment action occurred based on these facts. According to her own testimony, Plaintiff was not terminated by the Department of Corrections. Plaintiff left work on July 18, 2001 and retained her status as an employee of the District of Columbia for more than two and a half years. On or around March 4, 2004, upon receipt of a letter notifying Plaintiff that the District sought to terminate her due to her inability to complete her duties as a corrections officer, Plaintiff applied for and accepted disability retirement. A condition of accepting disability retirement was separation from her status as an employee with the Department of Corrections. While viewing the evidence in favor of Plaintiff, a reasonable jury could not find that Plaintiff was terminated, resulting in a tangible employment

action.

On October 22, 2010, the Court was not presented with facts to support her argument that Plaintiff was constructively discharged. However, even if the Court had been presented with facts supporting her argument that she was constructively discharged and the discharge constituted a tangible employment action, the Court still would have denied Plaintiff's motion. Under the doctrine of constructive discharge, an employee may resign because of unendurable working conditions and the resignation "is assimilated to a formal discharge for remedial purposes." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) (internal citations omitted). A constructive discharge may give rise to a tangible employment action only if the constructive discharge is the result of official company acts, and not co-workers' conduct or unofficial supervisory conduct. *See id.* at 148.

As described above, Plaintiff did not resign from the Department of Corrections because of unendurable working conditions. Viewing the evidence in the light most favorable to Plaintiff, she testified that she suffered an emotional collapse on or before July 18, 2001 and successfully applied for worker's compensation. She did not return to her workplace but remained an employee of the District of Columbia until 2004 when she successfully applied for disability retirement. Without a termination or resignation, Plaintiff's claim may not be considered under the doctrine of constructive discharge. *See id.* at 141. Additionally, even if Plaintiff had resigned in March 2004 due to Lt. Johnson's harassment, her 'constructive discharge' resignation would not have resulted from an official company act, a prerequisite for a constructive discharge to give rise to a tangible employment action. *See id.* at 148. Plaintiff testified that Lt. Johnson engaged in physical assaultive sexual harassment, including grabbing

her hair and rubbing her breasts, which, if true, would have constituted unofficial supervisory conduct. The sexual harassment occurred between April 2000 and June 2001, three years before she successfully obtained her disability retirement.

## III. CONCLUSION

For the foregoing reasons, the Plaintiff's motion for judgment on Defendant's *Faragher-Ellerth* defense was denied in open court on October 22, 2010. An appropriate order will accompany this opinion.

DATED: March 2, 2011  _____/s/_____
　　　　　　　　　　　　　　　　ALAN KAY
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE