UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YVONNE BROWN,

              Plaintiff,

    v.

DISTRICT OF COLUMBIA,

             Defendants.

Civil Action No. 09-1121 (AK)

## MEMORANDUM OPINION

Following a jury verdict for Plaintiff on her hostile work environment sexual harassment claim, the Plaintiff requested equitable relief in the form of back pay or front pay even though Plaintiff failed to plead or present to the jury a claim of constructive discharge during the liability phase of her jury trial, resulting in the absence of a finding of constructive discharge. The parties have submitted the following memoranda on this issue: Defendant District of Columbia's Memorandum of Law Regarding Back Pay and Front Pay [51] ("Def.'s Mem."), Plaintiff's Trial Memorandum Regarding Equitable Damages [52] ("Pl.'s Mem."), District's Response to Plaintiff's Trial Memorandum Regarding Equitable Damages [54] ("Def.'s Resp."), and Plaintiff's Sur-Reply to Defendant's Response to Plaintiff's Trial Memorandum Regarding Equitable Damages [56] ("Pl.'s Sur-Reply"). The Court heard oral argument on this issue on November 17, 2010. Upon consideration of the record, oral argument, applicable case law, and memoranda submitted by the parties, and for the reasons set forth below, the Court rules that Plaintiff's request for equitable relief, in the form of back pay and front pay, is denied as a matter of law and the Court enters judgment for Defendant on the equitable relief phase of trial.

## I.    BACKGROUND

Plaintiff Yvonne Brown, a former employee of the District's Department of Corrections, brings this action against the District of Columbia as respondeat superior for sexual discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (*See generally* Am. Compl. [29]) Specifically, Plaintiff alleges one claim of hostile work environment sexual harassment.[1] (*Id.* at ¶¶ 17 - 20) Plaintiff did not claim constructive discharge or any other discriminatory discharge, nor did Plaintiff allege any facts about her departure from the Department of Corrections in her complaint or amended complaint. (*See generally* Compl. [1]; Am. Compl. [29]) Plaintiff concedes that she did not argue constructive discharge before the jury at trial and thus a finding of constructive discharge was never made. (Pl.'s Mem. 5 ("Indeed, in this case there was neither such a claim [of constructive discharge] nor finding."))

According to the pleadings and evidence presented at the jury trial, the facts of the case are as follows. Plaintiff worked in the Transportation Unit of Lorton Correctional Facility in Lorton, Virginia from 1989 to July 2001. (Am. Compl. ¶ 6 [29]) According to Plaintiff, Lieutenant William Johnson, one of three shift supervisors of the Transportation Unit, subjected her to verbal and physical sexual harassment between April 2000 and July 2001. (*Id.* at ¶ 10) From April 2000 to June 2001, Lieutenant Johnson supervised a different shift than the one Plaintiff was assigned to. (*Id.* at ¶ 9) Beginning in June 2001, Lieutenant Johnson changed shifts and became Plaintiff's direct supervisor. (*Id.*) Plaintiff's emotional state "deteriorated significantly" during her time working with Lieutenant Johnson. (*Id.* at ¶ 14)

---

[1] Plaintiff's original and amended complaint included a second claim for *quid pro quo* sexual harassment. (*See* Compl. 4 [1]; Am. Compl. 4 [29]) However, the Court granted Defendant's Partial Motion to Dismiss this count (Def.'s Mot. to Dismiss [32]) with no opposition from Plaintiff. Plaintiff failed to exhaust her administrative remedies by not raising the *quid pro quo* claim before the EEOC (*see* Minute Entry, Oct. 15, 2010; Minute Order, Oct. 19, 2010).

At trial, Plaintiff testified to nine incidents of sexual harassment by Lieutenant Johnson at Lorton Correctional Facility from April 2000 to July 2001. Plaintiff testified that Lieutenant Johnson would restrain her by grabbing her hair or her neck and then proceed to rub her breasts. Plaintiff testified to two crude remarks Lieutenant Johnson made to Plaintiff when she approached him for approval to work an overtime shift: once asking her for a "lip-lock" and once asking to "get up in" her. Plaintiff refused Lieutenant Johnson's sexual advances. Plaintiff further testified that on one occasion, several colleagues pushed her into Lieutenant Johnson's lap and the Lieutenant forcefully grabbed her between her legs. In an incident in June or July of 2001, Plaintiff testified that during a physical altercation with Lieutenant Johnson, Plaintiff fell onto the floor when her chair broke and Lieutenant Johnson attempted to climb on top of her, at which time Plaintiff struck him in the groin.

Lieutenant Johnson denied Plaintiff's testimony regarding these incidents. He conceded that he once placed his hand on Plaintiff's shoulder and that on one occasion, several employees had pushed Plaintiff toward the Lieutenant in a joking manner when he was seated in a chair at his desk. During that incident, he admitted to putting his hands on Plaintiff in order to prevent her from falling into his lap, but he denied touching her in any sexually inappropriate area. He vigorously denied all other allegations of physical and verbal sexual harassment.

During all relevant times to the lawsuit, the D.C. Department of Corrections operated under a 1994 sexual harassment policy that stated:

> Each person who alleges he/she has been a victim of sexual harassment may file a complaint with either his/her immediate supervisor, the agency EEO Officer or EEO Counselor, Office Chief, Warden, Deputy Director, or the Executive Deputy Direction. This complaint may be submitted orally or in writing.

(Pl.'s Trial Ex. 1 at 4, D.C. Department of Corrections, Order 3310.4C, Sexual Harassment of Employees § VIII(E)(1) (December 14, 1994))

Plaintiff claims that she orally notified Sergeant Kenneth Graham, her immediate supervisor, in April of 2000 of the harassment, though she did not testify as to what she told him. Plaintiff testified that she orally notified Lieutenant Gregory King three times of her difficulties with Lieutenant Johnson. On two occasions, she complained about his supervision of her work, claiming that he was "harassing" her. On the third occasion, she spoke to Lieutenant King, on either July 17 or 18, 2001,[2] and told Lieutenant King of an incident of physical and sexual harassment that had taken place approximately three weeks earlier. Lieutenant King issued a cease and desist order to Lieutenant Johnson on July 18, 2001. (*See* Def.'s Ex. 2 ("Pursuant to notification that the above reference[d] employee has filed a retaliation complaint[3] against you, you are hereby ordered to cease and desist any and all contact with subject employee. An investigation committee has been established and this order will remain in effect pending conclusion of their investigation."))

On July 18, 2001, Plaintiff left work and never returned to the Transportation Unit. On July 20, 2001, Plaintiff submitted a written report to Lieutenant King describing an incident of sexual harassment that occurred approximately three weeks earlier in addition to two work-related complaints. (*See* Pl.'s Ex. 18) Prior to speaking with Lieutenant King on July 17 or 18, 2001, Plaintiff did not speak to or file a written complaint with the EEO officer or any other officer or director as outlined in the sexual harassment policy. Within days of her departure,

---

[2] There is conflicting testimony at trial regarding when Plaintiff notified Lieutenant King.

[3] No claim of retaliation was filed in the above captioned case. (*See generally* Am. Compl. [29])

-4-

Plaintiff suffered an emotional collapse and sought mental health treatment. Subsequently, she was diagnosed with post-traumatic stress disorder. (*See* Am. Compl. ¶ 14 [29])

Plaintiff applied for and received disability workers' compensation and remained an employee of the District of Columbia until March of 2004. (*See* Pl.'s Trial Ex. 10) In a letter dated March 4, 2004, two and a half years after her departure from the Transportation Unit, the District notified Plaintiff of their decision to terminate her for failure to perform her duties as a corrections officer. (*See* Pl.'s Trial Ex. No. 9 ("This is a straight forward, policy driven decision based solely on the fact that you are physically unable to perform the essential functions of your official position due to an on the job injury ... .")) Shortly thereafter, Plaintiff applied for total disability retirement, which was approved on March 25, 2004. (*See* Pl.'s Trial Ex. 10 at 1)

In order to receive retirement benefits, Plaintiff was severed from her employment with the Department of Corrections following her approval for disability retirement. (*See id.* at 1 ("According to information received from your agency, you have not been separated from government service. Therefore, we are notifying your agency of your [disability retirement] approval and asking them to separate you. ... Payment of annuity cannot start until after your last day of pay.")) As of the date of the trial, Plaintiff remains unemployed on disability retirement. At trial, via *de bene esse* deposition transcript, Plaintiff's treating psychiatrist, who began treating the plaintiff on July 19, 2001, testified that Plaintiff is unable to work and her condition of post traumatic stress disorder is permanent.

Plaintiff's original complaint prayed for relief in the form of compensatory damages, costs and attorneys' fees, and "[s]uch other and further relief that this Court deems just and proper." (Compl. ¶¶ a - c [1]) After the close of discovery in July, 2010, and before trial,

Defendant filed a Motion *In Limine* to prevent Plaintiff from raising any mention of or request for reinstatement, front pay or back pay at "any stage of the trial" because Plaintiff had not made a demand for this relief in her complaint. (Def.'s Mot. In Limine 3, Jul. 30, 2010 [21]) In August, 2010, Plaintiff filed a motion for leave to amend the complaint to include an additional prayer for relief for economic damages. (Pl.'s Mot. for Leave to File Am. Compl., Aug. 30, 2010 [27])

Before the Court ruled on either motion, the parties requested that the trial date be continued and the case referred to mediation. Defendant withdrew its Motion *In Limine* and did not object to Plaintiff's Motion for Leave to Amend the Complaint. (Minute Order, Sep. 2, 2010) The Court granted Plaintiff's motion to amend her complaint to include an additional prayer for relief for economic damages "to include back wages, compensation for forced retirement damages and appropriate offsets for wages, retirement, and other benefits, plus interest." (Am. Compl. ¶ b) Plaintiff did not move to amend her complaint to include a claim for constructive discharge, or any other discriminatory discharge, or to include any facts relating to her departure from the Department of Corrections. (*See generally id.*)

After failing to successfully resolve the case through mediation, the Court proceeded with the pretrial conference on October 12, 2010. The parties jointly requested that the Court bifurcate the trial into two phases: first, a jury trial regarding Plaintiff's claim of hostile work environment and request for compensatory damages. Second, if Plaintiff prevailed on her hostile work environment claim, the Court would then determine whether Plaintiff was entitled to an award of back pay and front pay. If the Court determined that she was entitled to such an award, the Court would then receive expert testimony on the amount of those awards. The Court

granted this request. The jury trial began October 15, 2010 and concluded on October 25, 2011.

Before trial, counsel provided the Court with proposed jury instructions and proposed jury verdict forms. (*See* Def.'s Proposed Jury Instructions [19]; Def.'s Proposed Verdict Form [22]; Pl.'s Proposed Jury Instructions [24]; Pl.'s Proposed Verdict Form [25]) Plaintiff's proposed jury instructions and proposed verdict form did not include any mention of constructive discharge or discriminatory discharge. (*See generally* Pl.'s Proposed Jury Instructions [24]; Pl.'s Proposed Verdict Form [25]) Before closing arguments, the Court provided counsel with draft jury instructions and a draft verdict form. The Court's final instructions and verdict form did not include instructions on constructive discharge or discriminatory discharge without objection by either party.[4] (Final Jury Instructions [45]) In her closing argument, Plaintiff did not argue to the jury that Plaintiff had been constructively or wrongfully discharged.

The jury returned their verdict in favor of Plaintiff on her claim of hostile work environment sexual harassment.[5] (Jury Verdict Form [47]) The jury further found that the Defendant did not succeed in proving both elements of its affirmative defense by a preponderance of the evidence.[6] (*Id.* at ¶ 4) While the jury found that Defendant did not

---

[4] On October 22, 2010, at the close of evidence, Plaintiff moved for judgment on Defendant's *Faragher-Ellerth* defense and requested a jury instruction on whether a tangible employment action occurred. The Court denied Plaintiff's motion and request. At that time, Plaintiff did not submit an explicit argument that she was constructively discharged, nor that any alleged constructive discharge amounted to a tangible employment action. (*See generally* Memorandum Opinion on Plaintiff's Motion for Judgment on Defendant's *Faragher-Ellerth* Defense, March 2, 2011 [58])

[5] "Do you find by a preponderance of the evidence: "1. That Plaintiff Yvonne Brown was subjected to a sexually hostile work environment? YES. [...] 2. That such hostile work environment was created or permitted by a supervisor with immediate or successively higher authority over Plaintiff? YES. [...] 3. That Plaintiff Yvonne Brown suffered damages as a proximate result of such hostile work environment? YES." (Jury Verdict Form 1-2 [47])

[6] "Do you find by a preponderance of the evidence: 4.(A) That the Defendant District of Columbia exercised reasonable care to prevent and correct promptly any sexually harassing behavior in the workplace? NO. - AND- (B) That the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities

exercise reasonable care to promptly correct any sexually harassing behavior in the workplace, the jury also found Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Defendant to avoid or correct the harm.  (*Id.* at ¶ 4(B))  The jury awarded Plaintiff $235,000.00 as compensatory damages for emotional pain and mental anguish.  (*Id.* at ¶ 5)

After the jury verdict and before the equitable phase of the trial was set to begin, the parties filed memoranda and presented oral argument to the Court on the request for back pay and front pay.  Counsel wished to avoid the time and expense of calling each party's economic damage expert before the Court had ruled on the scope of Plaintiff's entitlement to back pay and front pay.  The parties indicated that no further non-expert witnesses would be testifying.  In their trial memoranda, Plaintiff requested back pay and front pay, and Defendant objected to the request because Plaintiff did not plead or present to the jury a claim of constructive discharge.[7]  (Def.'s Mem. 4-5)  The Court deferred the expert testimony pending its determination *vel non* of Plaintiff's entitlement to equitable relief.  (Minute Order, Dec. 1, 2010 )

## II.    LEGAL STANDARD

---

provided by the Defendant to avoid or correct the harm? YES." (Jury Verdict Form 2 [47])

[7]  Defendant and Plaintiff raised additional arguments regarding Plaintiff's request for a lifetime award of front pay and whether Plaintiff sufficiently mitigated her damages.  (*See* Def.'s Mem. 5-11; Pl.'s Mem. 4-8; Def.'s Response 8-15; Pl.'s Sur-Reply 4-8)  The Court having determined that equitable relief is denied as a matter of law, does not reach the merits of these arguments.

The Court has a statutory duty to determine awards of equitable relief in Title VII claims. *See* 42 U.S.C. § 2000e-5(g)(1) ("If the court finds that the respondent has intentionally engaged in ... an unlawful employment practice charged in the complaint, the court may ... order ... reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate."). The trial court has "wide discretion to award equitable relief." *Peyton v. DiMario*, 287 F.3d 1121, 1126 (D.C. Cir. 2002) (quoting *Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995)). The court should "fashion this relief so as to provide a victim of employment discrimination the most complete make-whole relief possible." *Id.*

The equitable relief of back pay is not an automatic remedy for successful Title VII plaintiffs. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975). Although the United States Supreme Court noted that, "given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Id.* at 421. Front-pay is similarly to be awarded to make the plaintiff whole. *Barbour*, 48 F.3d at 1279.

Under the law of constructive discharge, an employee may resign because of unendurable working conditions and the resignation "is assimilated to a formal discharge for remedial purposes." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). Constructive discharge is determined by an objective standard: "[d]id working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Id.*; *Mentzer v. Lanier*, 677 F. Supp. 2d 242, 253 (D.D.C. 2010). In the D.C. Circuit, "[a]n actionable constructive discharge claim requires a showing that (1) intentional discrimination existed, (2)

the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Carter v. George Wash. Univ.*, 180 F. Supp. 2d 97, 110 (D.D.C. 2001) (citing *Clark v. Marsh*, 665 F.2d 1168, 1173-74 (D.C. Cir. 1981)).

A successful hostile work environment claim does not substitute for an unproven claim for constructive discharge. *Cf. Hopkins v. Price Waterhouse*, 825 F.2d 458, 473 (D.C. Cir. 1987), *rev'd on other grounds*, 490 U.S. 228 (1989) ("[T]he mere fact of discrimination, without more, is insufficient to make out a claim of constructive discharge."). To prove a hostile work environment claim, plaintiffs must "show that they were subjected to 'intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of ... employment and create an abusive working environment." *Mentzer*, 677 F. Supp. 2d at 253 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). To prove constructive discharge, the plaintiff must "demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992), *aff'd on other grounds*, 511 U.S. 244.

The majority of federal circuits have held that, absent actual termination or other discriminatory discharge, proof of constructive discharge is required in order to award a successful Title VII plaintiff with equitable relief in the form of front pay or back pay. *See, e.g.*, *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001) ("A victim of discrimination that leaves his or her employment as a result of the discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement, or back and front pay in lieu of reinstatement."). *See also Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311,

317 (3rd Cir. 2006); *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1237 (10th Cir. 2000);

*Boehms v. Crowell*, 139 F.3d 452, 461 (5th Cir. 1998); *Caviness v. Nucor-Yamato Steel Co.*, 105

F.3d 1216, 1219 (8th Cir. 1997). The oft-stated policy behind these rulings is that, absent

constructive discharge, "discrimination is still best attacked within the context of existing

employment relations." *Hopkins v. Price Waterhouse*, 825 F.2d 458, 473 (D.C. Cir. 1987), *rev'd

on other grounds*, 490 U.S. 228 (1989).

For example, in *Hertzberg v. SRAM Corp.*, the seventh circuit reversed a trial court's

award of front pay and back pay where the plaintiff did not plead constructive discharge and the

jury ruled against the plaintiff on their claim for retaliatory discharge. 261 F.3d 651, 659-61 (7th

Cir. 2001). The Court held that absent a successful discriminatory discharge claim, there was no

basis for the trial court to award front pay and back pay after the date of plaintiff's resignation.

*Id.*

In *Spencer v. Wal-Mart Stores, Inc.*, the third circuit affirmed the trial court's denial of

back pay because the plaintiff failed to request back pay and also waived their claim of

constructive discharge at trial. 469 F.3d 311, 317 (3rd Cir. 2006). The court held that "a

successful hostile work environment claim alone, without a successful constructive discharge

claim, is insufficient to support a back pay award." *Id.* The eighth circuit also reversed an

award of back pay to a plaintiff who successfully claimed hostile work environment sexual

harassment but failed to prove constructive discharge at trial. *Caviness v. Nucor-Yamato Steel

Co.*, 105 F.3d 1216, 1219 (8th Cir. 1997) (noting that "in the absence of constructive discharge, a

plaintiff subjected to sexual harassment, no matter how egregious, is not 'made whole' by the

equitable remedy of backpay").

In the D.C. Circuit, a plaintiff who is not terminated by her employer must prove that she was constructively discharged in order to support an award of post-resignation front pay or back pay. *See, e.g.*, *Clark v. Marsh*, 665 F.2d 1168, 1175-76 (D.C. Cir. 1981) (affirming the district court's award of relief, including back pay, as proper because the record and the trial court's detailed and explicit factual findings support a conclusion that the plaintiff was constructively discharged). For example, in *Donnell v. England*, a Title VII plaintiff, who established gender discrimination and retaliation through the jury's verdict but did not plead or prove constructive discharge, was not awarded back pay after her date of resignation nor was she awarded any front pay. 2005 WL 641749, at *2 (D.D.C. 2005). As the trial court explained:

> With due regard to Title VII's emphasis on "make whole" relief, however, an appropriate form of equitable relief in this case is to award plaintiff back pay [up until the date of her resignation]… . Plaintiff does not claim constructive termination, nor would the record support such a finding. Her resignation was voluntary, and accordingly no instatement or front pay will be awarded.

*Id.* at *2.

Unlike the majority of courts of appeal, the fourth circuit follows a minority "mitigation rule." When reviewing awards for back pay, instead of determining whether constructive or discriminatory discharge has been proven, the fourth circuit "appl[ies] the general statutory duty located at 42 U.S.C. § 2000e-5(g) to mitigate employer damages." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 651 (4th Cir. 2002) (awarding back pay to a Plaintiff who voluntarily left her employment after gender-based discrimination because she mitigated her damages by seeking comparable alternative employment).

## III.    DISCUSSION

This Court has been asked to determine whether Plaintiff, who succeeded on her hostile work environment claim at trial and was awarded $235,000.00 in compensatory damages by the jury, is entitled to equitable relief in the form of back pay or front pay where Plaintiff failed to plead or present to the jury a claim of constructive discharge during the liability phase of trial, resulting in no jury finding of constructive discharge. This Court addresses these issues and also reviews the evidence at trial to determine whether the record supports a finding of constructive discharge.

A.    Argument Presented by Defendant

Defendant urges this Court to apply the constructive discharge rule as articulated by other circuits, which requires a finding of constructive discharge by the finder of fact at trial in order to award equitable relief. (*See* Def.'s Mem. 4-5, citing, *see e.g.*, *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 660-61 (7th Cir. 2001)) Defendant argues that Plaintiff's failure to plead or claim constructive discharge, or present such a claim to the jury, "forecloses Plaintiff's request for front pay and back pay." (*See* Def.'s Mem. 4, citing, *e.g.*, *Mallison-Montague v. Pocrnick*, 224 F.3d 1224, 1236 (10th Cir. 2000) (concluding that the 1991 Civil Rights Act did not expand the types of relief available under Title VII to include the equitable relief of back pay and front pay to a plaintiff that failed to show constructive discharge)).

Defendant further argues that Plaintiff's testimony at trial regarding her mental state and her departure from the Department of Corrections is an insufficient basis for this Court to award front back and pay back. (*See* Def.'s Mem. 5) Plaintiff never argued that a hostile work environment in March 2004 compelled her to seek disability retirement. When her retirement was approved, she was required to sever her employment with the Department of Corrections.

Additionally, the jury did not evaluate the evidence Plaintiff presented at trial under the legal standard for constructive discharge. (*Id.*) Thus, "[a]bsent a viable claim for constructive discharge, plaintiff is entitled to no equitable relief in the form of back pay and front pay." (*Id.* at 5)

B.   Argument Presented by Plaintiff

Plaintiff argues first that a finding of constructive discharge is not required by this circuit to award front pay or back pay, or in the alternative, if the Court does require such a finding, the Court may make such a finding based on evidence presented at trial. Plaintiff concedes that at no time following her departure from the Lorton Facility did she submit a claim for wrongful termination or constructive discharge at the EEOC administrative level, by complaint, or by argument at the jury trial. As a result, a finding of constructive discharge was never made. (*Id.* at 5 ("Indeed, in this case there was neither such a claim [of constructive discharge] nor finding."))

First, Plaintiff argues that such a finding is not required, since "in this [C]ircuit a plaintiff need not show that she was either discharged or constructively discharged in order to recover back or front pay." (Pl.'s Mem. 5) Plaintiff relies upon this Circuit's case in *Fogg v. Gonzales* for the proposition that "where a defendant's violation of Title VII proximately caused psychological injuries to a plaintiff to such an extent plaintiff is unable to work, the plaintiff is entitled to an award of front pay damages." (Pl.'s Sur-Reply 5, citing *Fogg v. Gonzalez*, 492 F.3d 447, 456 (D.C. Cir. 2007)) Plaintiff notes that *Fogg v. Gonzales* makes no mention of a requirement for a constructive discharge pleading. (Pl.'s Sur-Reply 5) Plaintiff urges the Court to follow the fourth circuit's approach: not to apply the "constructive discharge rule" but instead

to evaluate whether the plaintiff mitigated her damages as required by statute. (Pl.'s Mem. 5, citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 651 (4th Cir. 2002))

In the alternative, if the Court holds that a finding of constructive discharge is required in order to award front and back pay, Plaintiff argues that she has presented sufficient evidence at trial to meet the elements of constructive discharge. Plaintiff argues this Court has the authority to make factual findings, such as constructive discharge, in the equitable phase of trial as long as those findings are consistent with the jury's verdict. (*See* Pl.'s Sur-Reply 3, citing *Porter v. Natsios*, 414 F.3d 13, 20-21 (D.C. Cir. 2005) ("During the remedial stage of the proceedings, the district court may make factual findings to determine appropriate 'make whole' relief ... as long as the findings are consistent with the jury verdict.")) Plaintiff relies on a second circuit case, *Fitzgerald v. Henderson*, to persuade the court that even absent a claim of "constructive discharge" in the complaint, the court may still find that Plaintiff succeeded in proving constructive discharge at trial. 251 F.3d 345, 367 (2nd Cir. 2001) ("Although the specific phrase 'constructive discharge' was not used in the amended complaint, the pleading asserted that [the employee] continually harassed [plaintiff]..., causing her to become unable to work at all. Such allegations are ample to encompass a theory of constructive discharge.").

Accordingly, Plaintiff suggests the Court could make a finding of discharge or constructive discharge in at least two ways. First, that Plaintiff was "forced to retire" from the Department of Corrections after she received the March 4, 2004 letter stating that she would be terminated for failure to complete her duties as a corrections officer (Pl.'s Mem. 6) and that Plaintiff's application for disability was a "forced retirement" that constitutes either discharge or constructive discharge (Pl.'s Sur-Reply 7). Plaintiff states: "As the jury determined and as

supported by ample evidence, Plaintiff was ill and incapable of working, and thereafter fired (or intended to be fired) by the D.C. government." (Pl.'s Sur-Reply 7)  The Court does not agree with Plaintiff's statement about what the jury determined in their verdict form. (*See infra* p. 19) Second, Plaintiff asks the Court to make a finding of constructive discharge based upon Plaintiff's testimony at trial of the aggressive sexual harassment of Lieutenant Johnson. (Pl.'s Sur-Reply 7)  Plaintiff argues that Plaintiff proved at trial that "she left [work] as a result of Defendant's consistent, aggressive and violent sexual aggression." (*Id.*)

C.     Analysis

Initially, this Court rejects Plaintiff's argument that this Circuit does not require a successful claim or finding of constructive discharge in order to award equitable relief to a Title VII plaintiff who is not terminated from her employment with the defendant.  Proof of constructive discharge is indeed required under these circumstances to support an award of front pay or back pay.  *See, e.g., Clark v. Marsh*, 665 F.2d 1168, 1175-76 (D.C. Cir. 1981); *Donnell v. England*, 2005 WL 641749, at *2 (D.D.C. 2005).  The majority of other circuits have held the same.  *See, e.g., EEOC v. L.B. Foster Co.*, 123 F.3d 746, 755 (3rd Cir. 1997) ("Courts of appeals 'have been nearly unanimous in their application of the constructive discharge rule, whereby victorious Title VII plaintiffs who have left their employment with the defendant but who were not constructively discharged by the defendant are only entitled to a remedy covering the period during which the discrimination occurred up to the date of resignation.").  These rulings are not obviated by *Fogg v. Gonzales*, where the jury found that racial discrimination motivated the defendant to terminate the plaintiff, which supported the trial court's award of equitable relief. *See Fogg*, 492 F.3d at 452.  Constructive discharge was not at issue in *Fogg*.  *See generally id.*

Thus, there is no need to apply the fourth circuit's mitigation rule in *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 651 (4th Cir. 2002), as the Plaintiff so urges the Court.

However, this Court finds that Defendant's proposed legal standard – that absent a pleading or jury finding of constructive discharge in the liability phase of plaintiff's trial Plaintiff is foreclosed from receiving front pay or back pay as a matter of law – is too narrowly constructed. Other circuits have narrowed the requirements of the constructive discharge rule in accordance with Defendant's standard. *See, e.g.*, *Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216, 1219 (8th Cir. 1997). But this Circuit has recognized that evidence presented at trial may suffice to support a finding of constructive discharge made by the Court at the equitable relief phase of trial, even absent a jury finding on this issue. *See Clark v. Marsh*, 665 F.2d 1168, 1176 (D.C. Cir. 1981). *Cf. Porter v. Natsios*, 414 F.3d 13, 20-21 (D.C. Cir. 2005) ("During the remedial stage of the proceedings, the district court may make factual findings to determine appropriate 'make whole' relief ... as long as the findings are consistent with the jury verdict."); *Harris v. Wackenhut Servs.*, 590 F. Supp. 2d 54, 57 n.1 (D.D.C. 2008) ("Although the plaintiff does not clearly indicate in his complaint that he is asserting a constructive discharge claim as a cause of action by explicitly placing the claim under the heading 'Causes of Action,' it nonetheless appears that the plaintiff is asserting a constructive discharge claim in connection with his race discrimination claim.").

In *Clark v. Marsh*, the D.C. Circuit rejected an argument similar to the one advanced by Defendant. 665 F.2d 1168 (D.C. Cir. 1981). In that case, the defendant claimed that plaintiff's failure to allege constructive discharge in her complaint or administrative charge should foreclose an award of front pay or back pay. *Id.* at 1172 n.4. The D.C. Circuit held that "[t]he

-17-

trial court has the authority to award appropriate relief dictated by the evidence, even though it

may not have been sought in the pleadings." *Id.* (quoting *Fitzgerald v. Sirloin Stockade, Inc.*,

624 F.2d 945, 957 (10th Cir. 1980)).  The D.C. Circuit then affirmed a portion of the district

court's award of equitable relief because the record and trial court's detailed factual findings

support a finding of constructive discharge to support an award of back pay, although the trial

court made no such explicit finding.  *Id.* at 1176.

It is undisputed that at the EEOC level[8], or in her complaint and amended complaint,

Plaintiff did not claim constructive discharge.  (*See generally* Compl. 4 [1]; Am. Compl. 4 [29])

Nor did she allege facts about her departure from the District of Columbia.  (*See generally* Am.

Compl.)  At trial, Plaintiff did not request jury instructions or a jury verdict on whether Plaintiff

was constructively discharged.  (*See generally* Pl.'s Proposed Jury Instructions [24]; Pl.'s

Proposed Verdict Form [25])  Plaintiff concedes that she did not argue constructive discharge

before the jury nor was there a finding of constructive discharge at the trial.  (Pl.'s Mem. 5)

Plaintiff had numerous opportunities over the course of litigation to amend her complaint to

include a claim for constructive discharge or to address the circumstances of Plaintiff's departure

from the Department of Corrections.  Defendant's Motion *in Limine* from July 30, 2010 further

put Plaintiff on notice that the complaint did not include sufficient basis for equitable relief.  (*See

generally* Def.'s Mot. In Limine, Jul. 30, 2010 [21])  The Court cannot ignore Plaintiff's failure

to plead claims and facts related to any claim of discriminatory discharge or constructive

discharge from the time she left the employ of the District of Columbia until the jury trial in

October of 2010.  Regardless, as the jury was not asked to, and therefor did not, make any

---

[8] Based upon the representation of Plaintiff's counsel, Plaintiff did not claim constructive discharge or
wrongful termination at the EEOC administrative level.

finding of constructive discharge, this Court assessed the evidence presented at trial, including credibility of the witnesses, to determine whether a constructive discharge occurred. This Court holds that Plaintiff was not terminated or constructively discharged from her employment with the Department of Corrections.

Both of Plaintiff's arguments that she was constructively discharged fail. First, Plaintiff argues that she was "forced to retire" from the Department of Corrections after the received the March 4, 2004 letter stating that she would be terminated for failure to complete her duties as a corrections officer (Pl.'s Mem. at 6) and that Plaintiff's application for disability retirement was a "forced retirement" that constitutes either discharge or constructive discharge. In her Sur-Reply, Plaintiff asserts incorrectly that the jury made findings regarding Plaintiff's illness, capacity for working, and the circumstances surrounding her departure from the District of Columbia Department of Corrections. (Pl.'s Sur-Reply at 7 ("As the jury determined and as supported by ample evidence, Plaintiff was ill and incapable of working, and thereafter fired (or intended to be fired) by the D.C. government.")) The jury made no such finding. The jury verdict form did not include – nor was there any request by counsel to include – special verdict questions about Plaintiff's illness, ability to work, or whether Plaintiff was fired by the defendant. (*See generally* Jury Verdict Form [47])

This Court finds that Plaintiff was not terminated by the District of Columbia. She received a letter in March of 2004 stating that the defendant made a decision to terminate her, but that termination never went into effect. (*See* Pl.'s Trial Ex. No. 9) Instead, in March of 2004, Plaintiff testified that she applied for, and was awarded, disability retirement. (*See* Pl.'s

Trial Ex. No. 10)  Her employment with the District ended solely as a requirement for her to receive disability retirement.  (*See* Pl.'s Trial Ex. No. 10)

Similarly, the Court finds that Plaintiff was not constructively discharged because she never resigned from her job.  Constructive discharge allows an employee who has *resigned* in the face of unendurable working conditions to be treated as if she was fired for remedial purposes. *See Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004).  However, Plaintiff never resigned.  She left the Transportation Unit on July 18, 2001 and never returned, but she did not quit. Plaintiff was an employee for more than two and a half years.  The District of Columbia informed Plaintiff that she would be terminated in the future due to her failure to complete her duties as a corrections officer.  (*See* Pl.'s Trial Ex. No. 9)  Then, Plaintiff successfully applied for disability retirement at which time she was severed from her position as an employee in order to accept retirement payments.  (*See* Pl.'s Trial Ex. 10 at 1)  This Court does not construe this severance as a constructive discharge.  Plaintiff's decision to apply for disability retirement two and a half years after her last day of work at the Transportation Unit was based on her inability to complete her work as a corrections officer and not intolerable working conditions.

The record does not reflect that during the two and a half years Plaintiff remained on worker's compensation she notified the District of Columbia Department of Corrections regarding whether she was interested in returning to her position.  Lt. Johnson, the person who sexually harassed her, retired in 2003.  When Plaintiff was notified by letter on March 4, 2004, that she would be terminated for failure to perform her duties, she did not request any alternate position with the Department of Corrections.

-20-

Plaintiff also urges the Court to make a finding of constructive discharge based upon plaintiff's testimony at trial of the aggressive sexual harassment by Lieutenant Johnson between April 2000 and June 2001.  (Pl.'s Sur-Reply at 7)  While the harassment as Plaintiff testified to is clearly unacceptable in any workplace – thus supporting the jury's verdict in favor of plaintiff on her hostile work environment claim and awarding her $235,000 compensatory damages – this successful claim does not automatically give rise to a finding of constructive discharge absent her resignation.  *See Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992), *aff'd on other grounds*, 511 U.S. 244.

An additional factor considered by the Court is Plaintiff's failure to report the sexual harassment in a timely or effective manner in accordance with the defendant's sexual harassment policy.  *Cf. Hopkins v. Price Waterhouse*, 825 F.2d 458, 473 (D.C. Cir. 1987), *rev'd on other grounds, 490 U.S. 228 (1989) (noting that "discrimination is still best attacked within the context* of existing employment relations").  The Jury also found that plaintiff failed to take reasonable advantage of Defendant's sexual harassment policy.  (Verdict Form ¶ 4(B))  Plaintiff waited more than fifteen months after the first incident of harassment before sufficiently notifying the District of Columbia that Lieutenant Johnson was sexually harassing her.  That the Defendant responded within one day to plaintiff's complaint of the sexual harassment with a cease and desist order to separate plaintiff and the alleged harasser speaks to the alternatives plaintiff had at her disposal when she left work and never returned to the Transportation Unit.  Cf. Landgraf, 968 F.2d at 430 (finding that working conditions did not rise to the level of a constructive discharge because the defendant-employer was taking "taking action reasonably calculated to alleviate the harassment" prior to plaintiff's resignation).

Thus, this Court cannot find that she had no choice but to resign. *See Carter v. George Wash. Univ.*, 180 F. Supp. 2d 97, 110 (D.D.C. 2001) (holding that the third element of constructive discharge is that plaintiff have no option but to end her employment). That she chose to remain a D.C. government employee for more than two and a half years after her departure, while receiving workers' compensation, only to apply for disability retirement in 2004, is further evidence that she was not coerced into an involuntary resignation.

In conclusion, this Court's denial of front pay or back pay does not frustrate the central statutory purposes of Title VII. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421-22 (1975) (holding that "given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination"). This Court's ruling that Plaintiff did not succeed in proving that she was constructively discharged comports with D.C. Circuit case law that such a finding is required in order to award front pay or back pay and that the proof of a hostile work environment does not automatically assume proof of constructive discharge.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's request for equitable relief, in the form of back pay and front pay, is denied as a matter of law and the Court enters judgment for Defendant on the equitable relief phase of trial. An appropriate order will accompany this opinion.

_____/s/_____

DATED: March 3, 2011                     ALAN KAY
                                         UNITED STATES MAGISTRATE JUDGE

-22-